Hi. Presenting judge for a lot of me, please the court. The key to this appeal. Is that when Scott Ricks received the 4 email. From us and the linked arbitration agreement from us. He was our managerial employee subject to our policy requiring him to check his work emails. The reasons why the district court order should be reversed flow directly from these facts. The reason number 1 is that because of these facts Rick's had constructive notice of the text in the emails and the arbitration agreement. And that text clearly stated that he could opt out of the agreement. But if he didn't opt out within 45 days, he would be bound by it. And reason number 2 is that despite this constructive notice of this information, Rick's didn't opt out timely or ever. So under the presidential case law, we cited Rick's is bound by the agreement as the 9th Circuit explained the point in Circuit City vs. Najd where circumstances place the offery under a duty to act or be bound. His silence or inactivity will constitute his assent and expressly relying on Nash, the 7th Circuit elaborated on the point in Gupta vs. Morgan Stanley. Employment includes the understanding that employees will act with diligence and following an employer's instructions and responding to requests, whether transmitted by email or another reasonable mode of communication. Difference in Najd was that Najd actually acknowledged receipt of the order. And here we have it's Rick's, right? Rick's didn't acknowledge even receiving an email on the subject. That's true. Najd is one of the cases where the employee happened to have expressly acknowledged receiving the email. Right. So if he acknowledged receiving it, then it's like constructive notice that he read it or knew what it was about. Oh, he also signed an acknowledgment form. So he signed that he had received it. And then he did nothing here. The emails were found in Rick's inbox. Yes. But he never opened them. True. But cases have held repeatedly that you don't need an acknowledgment from the employee. You don't need proof that the employee has read the council. The two cases you just cited to us, the Circuit City vs. Ahmed and Circuit City vs. Najd, both had written acknowledgments by the employee. Najd was a written acknowledgment. Gupta was the Seventh Circuit case. I thought I cited that one. That was applying Illinois law, which is the same as California law on this point. And there was no signed acknowledgment by the employee there. But cases applying expressly employing California law, Craig vs. Brown and Root, there was no signed acknowledgment. There was no evidence the employee read the memorandum. It simply said, you're going to be bound by this. The employee didn't opt out, didn't resign, and the employee was bound. And Davis vs. Nordstrom is similar. There was no written acknowledgment. The new arbitration agreement was sent in the mail. There's no evidence the employee read it, acknowledged it, but the employee was bound. So when the district court held that, despite Rick's constructive knowledge that he'd be bound if he didn't opt out and he failed to opt out, nonetheless he's not bound, solely because he didn't acknowledge receiving the email, the district court erred. And Rick's defends the district court's holding on a ground that the district court didn't expressly rely on, which is there's language in one sentence in our initial email. Nick says that, ah, we admitted that we need an acknowledgment. Otherwise, we couldn't possibly know whether he's voluntarily agreeing to the arbitration agreement. But the problem with – there are two problems with Rick's argument. Number one is he misrepresents what we said. He claims we said the inverse of what we actually said. We said if you acknowledge it, we'll know you're voluntarily participating, which is a simple, straightforward, accurate statement. It's not the inverse that if you don't acknowledge it, we can't possibly know. It's just not what we said. And perhaps more fundamentally – you've reviewed the MDRA so that we know you are making the decision regarding participating or not participating, i.e. opting out, knowing involuntarily. So it seems to be like an acknowledgment by Thurman Fisher that you have to at least acknowledge that you received it, because then you can be making a decision. And without a decision, then there can be no agreement. Yeah, it's just not quite what we said. That, I think, is turning into – He wasn't reading it verbatim. But we didn't say we need you to acknowledge it so that we know, that if you don't acknowledge it, we won't know. It's just not what we said. We said if you acknowledge reviewing it, then we'll know. You said it is important to acknowledge that you have reviewed it so that we know. Correct. That your decision is knowing and voluntary. Agreed. That is one way we would know. But he failed to acknowledge, so can we possibly know? Yes, we can. As this case shows, we still reasonably understood his silence to manifest his assent because of all the other steps we took to make sure that he read it and didn't ignore it. But he did just that. He didn't read it and he did ignore it. Didn't he? I mean, isn't that what – At his peril. Yeah. Oh, at his peril. Okay. Yeah. We explained clearly. You've got to read it. It's important to read. So, counsel, under California law, silence generally doesn't constitute acceptance unless there's other things there that would give us belief that the parties – this is how they engage all the time. You know, we always tell them, hey, if you don't get back to us, we're going to assume that you're okay with this. So tell me what facts and where I can find them in your record would give rise to that here. It's the fact that he's our managerial employee subject to our policy requiring him to check his work emails. That's the course of dealings that makes it reasonable for us to understand his failure to opt out. So, counsel, going off of that, though, didn't you send him three or four because he wasn't responding? So if that were true, wouldn't you just need to send one and say, hey, it's your responsibility? Perhaps. Perhaps one is enough. But we took additional steps. Why would you if you don't need to? Because we wanted to strengthen our argument that we've done everything we can to clearly impress upon him the importance that he read it. I'm curious. Why not talk to him? I mean, why just send emails when you're not getting response? Why not just go into his office or wherever he works and just say, hey, did you get this? You got to respond one way or the other. That is one way to do it. Perhaps a better way to do it. We're a large company, but the record is silent as to why. Why didn't your client just go and go talk to him and say, you have to respond to this. You can't just ignore your emails. Yeah. The record's silent as to why we chose this method. OK. But it was the emails. It was for emails. And I don't know. I I sometimes never receive. I don't open them. I don't. I lose them because I'm traveling or in court. And I you know, I just I miss things on email sometimes. I mean, I think a lot of people do. It's just not the most effective way to communicate. Understood. And I understand, of course. And to judge to all this question, that's why we didn't just send one with action required. Yes, we sent one with action required. It's important to read this email. It's important to read the agreement. When he didn't do it, we sent a reminder, a second reminder and a third reminder. So four emails total. Did you need to send four? What if you were standing before us with one? Is that enough? The issue is, would it still be reasonable for us to interpret his silence as assent? It's a closer call, I would argue. Yes, especially given all the things that we said in that email actually required of the subject line. That's a cover email. Didn't you have to click a hyperlink to actually see the MDRA? Exactly. The email said action required. It's important that you read the – here's a link to the agreement. It's important that you read this agreement linked here to make the decision whether you will participate or not. You've got to take two steps. Not only read the email, but then click on the hyperlink to see and then read that. Counsel, please clarify facts for me. Is there evidence in the record that he actually opened – not the hyperlink, but just the email itself, that it wasn't just lost in his inbox? The record is silent as to whether he opened them. Do you have – does your company have or your client have the ability where they do, like, hey, we can tell somebody opened an email we sent? Again, the record's silent. We went in when he quit. We went in and looked, and we found all four of the emails sitting in his inbox, but the silent as to whether he opened them or not. So should we accept that as he did open them or not? I don't know how we're supposed to construe the silence here. I think you've got to construe it as he did not read them. I don't think it matters. Whether or not he opened them, he didn't read them. If he didn't read them, how could he have sent to them? Because, right, he didn't have actual notice. The issue is, did he have constructive notice? And our contention is he did have constructive notice because he had a duty to read them, because he's our employee, subject to our policy, requiring to read his work emails. I mean, that's why I was quoting the Gupta case where there was no acknowledgement. Employment includes the understanding employees will act with diligence and following an employer's instructions and responding to requests. I mean, that's this case. But your argument that Gupta's not a California case, I know you're saying it's an analogous body of law, but Gupta was not a California employment case, was it? It was not. It was Illinois law. But you're saying they're similar. They're identical. There's no allegation that they're different. So it's not binding, but the reasoning, I think, is persuasive. As Gupta says, this case does not present an unsolicited offer by email from a stranger when the expectation of the offeree's response is rare, if not baseless. I mean, if Ricks, prepared to concede, if Ricks is our customer and we sent to him, hey, action required, you're going to be bound to our arbitration agreement if you don't read the attached link and opt out, he's not bound. Four reminders. To a customer, he's not bound. That, I think, is the Cifuentes versus Dropbox case that my friend on the other side cites. That's a good case for them. For consumers. Consumers will not be bound. Employment makes all the difference. My friend on the other side also argues that we were required to expressly inform him that his continued employment would manifest his assent, but that's not accurate. The Ninth Circuit held in Davis versus Nordstrom that, quote, California law imposes no duty upon Nordstrom, the employer in that case, specifically to inform employees that their continued employment constituted acceptance of new terms of employment. So for these reasons, I'd encourage the Court to reverse the order, and unless there are no further questions, I'd like to reserve my time for rebuttal. All right. Let me do so. Thank you. Good morning, Your Honors. May it please the Court, Stacey Mouton on behalf of Appellee Scott Ricks. Thurman Fisher asked this Court to enforce an arbitration agreement that Ricks never saw, never signed, never acknowledged on the theory that four emails sitting unread in a crowded inbox bound him to waive his right to a jury trial. Judge Curiel made a well-reasoned decision on the evidence before him, that Thurman Fisher failed to carry its burden of proving Ricks consented to arbitrate. And while we contend that that finding is reviewed for clear error, as Thurman Fisher appeared to originally concede in their opening brief, the same result follows de novo. The fact is that silence in the face of four unread emails in a crowded inbox that do not clearly warn Ricks that if he does not act, he will be bound to arbitrate, cannot form a contract. With that in mind, there are two bases on which this Court may affirm. First, under California law, only in narrow, exceptional circumstances for which none exist here can silence constitute consent. Thurman Fisher offers no evidence that Ricks engaged in prior conduct that would make it reasonable for it to believe that Ricks' silence constituted consent. And second, even if this were an exceptional case, no agreement was formed because contract law still requires notice, and Ricks never received notice because adequate notice would have required Thurman Fisher to inform Ricks that his failure to act would bind him to arbitration. If the Court has questions? I do, Counsel. What do you say in response to your friend on the other side arguing that, you know, Mr. Ricks was a manager, so he had an obligation to read his emails, and it's on him that he didn't? There is no evidence in the record that Ricks was ever disciplined or spoken to about his failure to review emails. According to Ms. Raposa's declaration, Thurman Fisher simply stated that employees had to check their emails, not that they had to respond to them. And, again, they didn't counsel him or talk to him in any way, which seemingly would show that he didn't have to do anything in this case in order to opt out. As to my first reason to begin, the governing rule here comes from California's highest court and Gentry v. Superior Court. The California Supreme Court recognized that the default rule is that silence is not consent. It also recognized that there can be narrow exceptions, and the one that matters here is prior conduct. However, what Gentry does not say is that simply by being an employee, that then turns a person's silence into consent. What made the employer's action a reliance reasonable in Gentry was that the employee signed an acknowledgment form, and it was that prior affirmative act that allowed the employer to treat his failure to opt out as acceptance, meaning this exception turns on something the offeree did and not by virtue of his employment. Here, Thurman Fisher's own email shows that they knew what was required and that they did not have it. Thurman Fisher, in turning to the emails, confirms this very requirement wherein the appellate told its employees, in order for it to know whether they were making a decision knowingly and voluntarily that they needed an acknowledgment of receipt. And it is undisputed that the acknowledgment was never provided. The only thing that the appellates point to as evidence of assent are four unread emails that they found in Rick's inbox during this litigation. But had Thurman Fisher genuinely wanted to know whether their employees were agreeing to arbitrate, it had means to find out. It could see who opened and who acknowledged receipt of their communications. It should not be able to spring arbitration onto an employee by surprise. Thurman Fisher took no further steps to confirm that Rick's actually knew what was happening. And even though by its own admission, it knew what it needed. It sent reminder emails. It could have just as readily sent someone down to his office from HR to say, we still don't have your acknowledgment. But it never did. And in the Ninth Circuit, in Breyer v. Neiman Marcus, this court recognized that where an employer requires or seeks acknowledgment and never receives it, it cannot reasonably infer consent from the employee's silence. That is exactly why Judge Furriels correctly found that this company lacked evidence to prove consent. And Thurman Fisher's fallback argument is that the employment relationship itself supplies that something extra that makes reliance on silence here reasonable. That because Rick's was an employee, he needed to read and respond to emails. But that's not how this record bears out. There is no evidence that Thurman Fisher has ever disciplined any employee for their failure to read any emails. There is no evidence that Thurman Fisher and Rick's had ever formed a contract in this way before. There is no prior agreement. There is no prior course of dealing. So while there are several ways that an offeror can make reliance on silence reasonable, Thurman Fisher has failed to establish any here. So as Judge Curiel correctly found, there is simply no evidence of consent on this record. And on that basis alone, this court can affirm. As to my second point, even if this were an exceptional case, had he read the emails, none of them provide sufficient notice, inquiry notice. The question here becomes whether these emails told Rick's that he had to do something affirmatively to avoid being bound. They do not. And in Gunta, the court distinguished its facts from the First Circuit Court Campbell v. General Dynamics. And I have that case cited if the justices would like it. And as they examined in Campbell, the issue was, one, the employer's email did not warn that the failure to act would bind the employee to arbitration. Two, it did not, the email did not specify that the arbitration would be binding upon continued employment. Three, the email did not define what workplace disputes even meant. And four, there was nothing in that case that required a response at all, whether an acknowledgment of receipt or something that signified that the employee had read it. Here, those same issues exist. The email Somer Fisher sent to Rick's, one, never affirmatively warned Rick's that his failure to act would bind him to an arbitration agreement. Two, they never specified that his continued employment would constitute assent. Three, the emails that Thurmer Fisher sent Rick's also do not define what workplace disputes are. And even worse than the case in Campbell, Thurmer Fisher noted that it did, in fact, need an acknowledgment to know whether Rick's was participating or not voluntarily and knowingly. And again, it is undisputed that Rick's did not provide notice of acknowledgment. And additionally, while Thurmer Fisher's initial email contained a vague reference to a process outside of court that could result disputes, which could be anything, those emails did not clarify that arbitration was now going to be his exclusive avenue of relief. So while Campbell is an out-of-circuit decision, to the extent that this court is inclined to read the Fifth and Seventh Circuit decisions, the First Circuit court decision in Campbell does provide persuasive authority because it states the same principle that the Ninth Circuit has applied. A company cannot bind a person through silence by sending a vague email. Again, even assuming a reasonable employee read those emails, the email itself never conveys what will happen if an employee does nothing. These emails just don't. They tell Rick's that there's a new program. They say that he should review an agreement and that he has 45 days. But they never tell him that doing nothing would bind him to arbitration or that it will cost him his right to a jury trial. And Thurmer Fisher's answer that our authorities in Norcia or Berman, as well as the rest, are all consumer cases, so they don't count, is not right. The law here is recent elaboration from existing arrangement. What the Ninth Circuit has recognized across a range of contexts is that before silence or inaction will bind someone to a contract's terms, the notice must carry a sufficient level of information about the consequences of not acting. This would be our proposed rule here. The emails do not carry that information, and Thurmer Fisher has offered no reasons why an employee should be held to a lower standard than anyone else. A contract is a contract, and no thumb goes on the scale because the subject is arbitration or because one party happens to be an employee. By way of conclusion, in the end, Judge Curiel made a fact-based decision on the evidence before him. Thurmer Fisher did not carry its burden of proving consent because it had no evidence that it was reasonable to treat Rick's silence as consent. That is a factual finding. So in the facts, there was a mass layoff that occurred shortly after? About four years later. Four years later. Yes, Your Honor. So he worked there four years more. Yes, Your Honor. And no one ever gave him a hard copy of the arbitration agreement or said he didn't respond to these four emails? No, Your Honor. No one ever spoke to Rick's about his failure to respond to the emails or sign an acknowledgment or the arbitration agreement itself. Okay. Thank you, counsel. So given the factual finding made by the district court, we contend that the review is for clear error. But again, this court may not even reach that question because the same result follows de novo. An unread email and a crowded inbox that does not provide clear notice of the consequences of inaction or silence cannot create a contract. We thus request that this court affirm. Thank you, Your Honors. So my friend on the other side cites no case holding. We were required to discipline Rick's for not acknowledging receipt in order for our understanding of his silence to manifest assent to be reasonable. We just didn't have to discipline for him. We had a policy. The district court found page seven. Thermo Fisher has a policy requiring employees to check their work emails, especially those that required action and related to Thermo Fisher policies. We sent him four emails saying action required. Read this email. Read the linked arbitration agreement. He failed to do so at his peril. Because he had constructive notice he would be bound if he didn't opt out and he failed to opt out. He's bound. Counsel, I mean, again, maybe this isn't a fair question. It seems to me I used to manage lawyers and if they didn't sign the form, you go to their office and say, are you going to sign the form or not? And it seems like here they had four years to do that and that didn't happen. Does that bear any relevance to our inquiry here? I mean, it's a good argument. Maybe we should have done that. But ultimately the issue is despite the fact that we didn't speak to him, was it still reasonable for us to understand his silence as assent? Our contention is, yes, given the repeated emails we sent him, given our policy, he's got to read our emails and the emails were not subtle. They said action required. You've got to do this. No, look, that may be a separate grounds for termination. I mean, if you have an employee who isn't reviewing what they're supposed to be doing in their job, that might be another reason to let the person go. But I know that's not the issue in this case. No, look, I understand the frustration from the employer. Just read your emails. But California law is what it is and you've got to – well, I guess we're going to tell you what we think. But I just think that there are many steps here that obviously your client could have done to make us not be here today. But that's not the issue before us. That's good. My time is up, so I encourage the court to reverse. All right. Thank you, counsel. Ricks v. Thermo Fisher Scientific Corporation is submitted. We'll take up Meineke Franchiser v. CJGL.
judges: WARDLAW, OWENS, ALBA